**NORFOLK SOUTHERN RY. CO. v. DAVIS FROZEN FOODS, Inc.**

No. 6376.

United States Court of Appeals
Fourth Circuit.

Argued March 10, 1952.

Decided April 1, 1952.

John M. Simms and Robert N. Simms, Jr., Raleigh, N. C. (Robert N. Simms, Raleigh, N. C., on brief), for appellant.

Murray Allen and Franklin T. Dupree, Jr., Raleigh, N. C. (Archibald Craige, Winston-Salem, N. C., on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is an appeal from a verdict and judgment for defendant in an action by the Norfolk Southern Railway Company to recover damages alleged to have been sustained as a result of a truck's colliding with a trestle bridging the underpass of a state highway at Bailey, North Carolina and dislocating plaintiff's railroad track. The owner of the truck, Davis Frozen Foods, Incorporated, is the defendant in the action. Plaintiff contends that the collision with the trestle was due to negligent operation of the truck and resulted in the wrecking of one of its freight trains. Defendant denies negligence in the operation of the truck and pleads contributory negligence on the part of plaintiff in failing to

provide adequate warning signs on the underpass and in operating the train which was wrecked.

The case was submitted to the jury under five issues, the first relating to negligence of the defendant, the second to contributory negligence of plaintiff, the third to proximate cause, and the others to damages. While the first issue submitted was in the form, "Was the damage sustained by plaintiff caused by the negligence of the defendant?", the jury was instructed to find under that issue merely whether the negligence of defendant resulted in dislocating the track. Under the third issue, they were directed to find whether, notwithstanding this negligence, the plaintiff in the exercise of proper care could have avoided the wrecking of the train. This issue was directed to the contention that the negligence of the defendant was not the proximate cause of the wreck but that the proximate cause was the supervening negligence of plaintiff. The plaintiff asked a directed verdict as to each of the issues, which was denied. The jury answered the first issue "No" and, under the direction of the court, did not answer the other issues.

■ While much space was devoted in the plaintiff's brief to a discussion of the question as to whether the verdict on the first issue should have been set aside as contrary to the weight of the evidence, it is well settled that the granting of a new trial on this ground is a matter resting in the sound discretion of the trial judge which may not be urged upon appeal, in the absence of abuse of discretion. Kirstner v. Atlantic Greyhound Corp., 4 Cir., 190 F.2d 422. The questions really before us are (1) whether it was error to refuse to direct a verdict on the first issue as interpreted by the judge's charge; (2) whether it was error to submit the second and third issues; and (3) whether evidence as to warning signs placed at other underpasses beneath plaintiff's tracks was properly admitted.

■ On the first question, we think that there was error in not directing a verdict for plaintiff upon the first issue, as we are of opinion that the evidence so clearly established that the dislocation of the tracks was due to negligence on the part of the driver of the truck that reasonable men could entertain no doubt about the matter. The evidence shows that the underpass, which was built by the State Highway Commission beneath the plaintiff's tracks, had a clearance of only 9.1 feet. Defendant's truck was 9½ feet high. There was no clearance sign on the trestle over the underpass, but by the side of the road some distance away was a warning sign, which the Highway Commission had erected, partly obscured by weeds, stating that the clearance was 8½ feet. The driver of the truck states that he did not see this sign, but he had passed through the underpass before when driving a smaller truck and knew that the clearance was low. He says that he did not think about being in a larger truck on this occasion until he was right at the underpass and that he then put his foot on the brakes just as the top of the truck struck the trestle. Asked why he did not think of the fact that he was driving the larger truck, he stated that he just was not thinking. On this evidence reasonable men could not differ as to his negligence in running into the trestle. The low underpass was before him, he knew or should have known that he was driving a high truck and to drive such a truck into the low underpass without stopping to ascertain whether or not he could safely make the passage or in forgetfulness of the kind of truck he was driving is certainly failure to exercise that care of a reasonably prudent man which the law requires. "The law does not excuse thoughtlessness". Fox v. Texas Co., 180 N.C. 543, 105 S.E. 437, 438.

■ Likewise, we think that reasonable men could not differ as to the fact that the collision was the cause of the dislocation of the tracks. The rails were spiked to cross ties, which in turn were bolted to iron I beams which rested on timbers supported by piling. The top of the truck struck one of the I beams with force sufficient to cause the crumpling of the metal top of the truck across its entire front. One hour afterwards, when the wreck occurred, the trestle, including the I beams and cross ties as well as the rails, was found out of line just as though it had been shoved over by the col-

lision. Nothing had occurred in the meantime to throw it out of line and, although the matter was carefully investigated by both parties, nothing was found except the collision to account for the dislocation. Buckling of the tracks as a result of heat expansion of the metal rails is suggested; but the wreck occurred in the morning and there is no evidence of excessive heat at that time. Furthermore, it is too great a strain upon the credulity of reasonable men to ask them to believe that heat buckling should have occurred on a three hundred mile line of railroad at the one place which had just been struck by the negligently driven truck. Testimony of the driver of the truck that the truck struck lightly and testimony that he and another looked up at the trestle and did not notice any dislocation has no probative value in the light of the other evidence in the case. Atlantic Coast Line R. Co. v. McLeod, 4 Cir., 11 F.2d 22, 23.

■ We think, therefore, that when the question propounded by the first issue was limited, as it was by the judge, to the question as to whether the dislocation of the track was due to the negligence of the truck driver, the jury should have been instructed to answer the issue "Yes". The fact that the burden of this issue rested upon the plaintiff is immaterial; for the rule is well settled that the court, upon request, should direct a verdict in favor of the party having the burden of proof if the evidence establishes the facts in his favor so clearly that reasonable men could entertain no doubt with regard thereto. Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720; Slocum v. New York Life Ins. Co., 228 U.S. 364, 33 S.Ct. 523, 57 L.Ed. 879; North Pennsylvania R. Co. v. Commercial Nat. Bank, 123 U.S. 727, 8 S.Ct. 266, 31 L. Ed. 287; Marshall v. Hubbard, 117 U.S. 415, 6 S.Ct. 806, 29 L.Ed. 919; County of Macon v. Shores, 97 U.S. 272, 278, 24 L. Ed. 889; Angelo v. Lamborn, 4 Cir., 2 F. 2d 854, 855; N. Jacobi Hardware Co. v. Vietor, 4 Cir., 11 F.2d 30; Lyon v. Travelers' Protective Ass'n, 4 Cir., 25 F.2d 596, 597; United States v. Grannis, 4 Cir., 172 F.2d 507, 513. As said by Judge Soper in the case last cited:

"In the federal courts the judge should direct a verdict for either party, even if the party has the burden of proof, when the facts are so convincing that reasonable men could not differ as to their significance; and this is especially true when there is no conflict in the evidence."

■■ We do not think, however, that there was error in the submission of the second and third issues relating to the negligence of the plaintiff. It was the duty of plaintiff to give adequate warning to travelers along the highway of this dangerous low underpass, notwithstanding that the highway was constructed and maintained by the Highway Commission and a similar duty may have rested upon it. The crossing above the level of the highway was for the benefit of the railroad as well as of the public; and, if there was danger to the public in its maintenance, the railroad as the owner in charge of the property, the presence of which constituted the danger, was under obligation to see that due warning thereof was given. See Contino v. Baltimore & Annapolis R. Co., 4 Cir., 178 F.2d 521; Id., 4 Cir., 185 F.2d 932. Whether the warning sign put up by the Highway Commission and partially obscured by weeds was a sufficient discharge of the duty was a question for the jury, as was also the question as to whether the negligence, if it existed, was a contributory cause of the collision. It is argued that since the truck driver has testified that he was not thinking, the absence of a warning sign on the underpass could not be deemed a contributory cause; but an adequate warning sign on the underpass might have caused him to think. That is one of the purposes of warning signs.

■■ On the third issue, there was evidence to the effect that trains could lawfully be operated in the town of Bailey at a rate of speed not exceeding 15 miles an hour and that the railroad track approaching the underpass was straight and the underpass could be seen for a distance of half a mile or more. Defendant contends that, if the train had been operated at a lawful rate of speed and a proper lookout had been kept, the dislocation of the rails would have

been discovered in time to have stopped the train and have avoided the wreck. If the jury had found in accordance with this contention, the negligence of plaintiff as a supervening cause, and not the negligence of the defendant, would have been the proximate cause of the wreck. There was evidence of employees of the railroad that the dislocation of the rails could not have been seen from a sufficient distance to have stopped the train and have avoided the wreck, but the credibility of this evidence and the questions which it presented were for the jury.

■ The case might have been submitted by the judge on the issues of negligence and contributory negligence without the issue addressed to proximate cause, which could have been covered by the charge on the other issues. The formulation of issues, however, is a matter resting in the sound discretion of the trial judge, and we cannot say that the discretion was not properly exercised in submitting the third issue here, where the failure to stop the train was relied upon not merely as negligence contributing to the wreck but as supervening negligence which insulated the negligence of the defendant and became in law the sole proximate cause of the injury. The number and form of issues, if they present the case fairly, is a matter resting in the sound discretion of the trial judge. Rule 49(a) of Rules of Civil Procedure, 28 U.S.C.A.; Mourikas v. Vardianos, 4 Cir., 169 F.2d 53, 57; Moore Federal Practice, 2d ed. vol. 5, p. 2206. This rule is well settled in North Carolina, where this case was tried and where the practice of submitting civil cases to juries under interrogatories has long prevailed. Griffin v. United Services Life Ins. Co., 225 N.C. 684, 36 S.E.2d 225; McLawhorn v. Coppage, 188 N.C. 455, 125 S.E. 2; American Potato Co. v. Jennette Bros. Co., 174 N.C. 236, 93 S.E. 795. It was well stated by the Supreme Court of North Carolina in Clark v. Patapsco Guano Co., 144 N.C. 64, 56 S.E. 858, 861, 119 Am.St.Rep. 931, as follows:

"The court below need not submit issues in any particular form. If they are framed in such a way as to present the material matters in dispute, and so as to enable each of the parties to have the full benefit of his contention before the jury and a fair chance to develop his case, and if when answered, the issues are sufficient to determine the rights of the parties and to support the judgment, the requirement of the statute is fully met."

■ On the question of evidence, witnesses were allowed to state that on some other underpasses of the railroad signs were placed upon the trestles showing the clearance. There was no evidence as to any general custom in this matter, nor evidence of enough instances to show a practice widely followed; and we think that the admission of the testimony as to what was done by plaintiff in one or two instances was inadmissible and had a tendency to mislead the jury. See Raper v. Wilmington & W. R. Co., 126 N.C. 565, 36 S.E. 115; Marks v. Harriet Cotton Mills, 135 N.C. 287, 47 S.E. 432; Sibbert v. Scotland Cotton Mills, 145 N.C. 308, 59 S.E. 79; Grubbs v. Lewis, 196 N.C. 391, 145 S.E. 769; 65 C.J.S., Negligence, § 232, page 1049; 38 Am.Jur. p. 1016. If supported by evidence of other instances sufficient to establish a practice as generally followed in the marking of underpasses, it would have been admissible as some evidence of the standard of care exercised by ordinarily prudent men under like circumstances. Chicago Great Western R. Co. v. McDonough, 8 Cir., 161 F. 657; Chicago Great Western R. Co. v. Egan, 8 Cir., 159 F. 40, 45; 65 C.J.S., Negligence, § 232, page 1050. And see Wigmore on Evidence, 2d ed., vol. 1, p. 700. But it was not so supported.

For the reasons stated, the judgment appealed from will be reversed and the case will be remanded for a new trial.

Reversed and remanded.