HENRY D. SMITH v. S. P. HANCOCK AND THOMAS THOMAS.

(Filed 4 October, 1916.)

**Mortgages—Foreclosure — Injunction — Partnership Profits—Verdict—Judgments.**

In a suit to restrain the foreclosure of a mortgage there was evidence in plaintiff's behalf tending to show that the mortgage was only given to indemnify the defendant in advancing money for partnership purposes, and that the enterprise had resulted in a profit; and in defendant's behalf that the mortgage was given to secure an additional debt owed by the plaintiff, with evidence to the contrary. Under appropriate issues and correct instructions the jury found that the note and mortgage had been paid and that defendant was indebted to plaintiff for partnership

profits:  *Held*, the verdict established the fact that plaintiff owed de-
fendant nothing for outside individual transactions, and judgment was
properly entered in plaintiff's favor.  The principle that reversals are
not granted upon slight technical errors alone discussed by WALKER, J.

CIVIL ACTION tried before *Devin, J.,* and a jury at June Term, 1916,
of CARTERET.

The action was brought by plaintiff to restrain defendant from fore-
closing a mortgage, given by plaintiff and wife in 1905.  The plaintiff
and defendant Hancock, in June, 1905, formed a partnership for the
purpose of buying, bedding, and shipping clams.  Hancock was to fur-
nish the money to be used in the business, not exceeding $500, and Smith
was to give his time and work when necessary.  There was evidence that
Smith and wife executed a mortgage on their home for $250 to secure
Hancock for half of the amount to be expended in the business. Smith
received no money on the mortgage, but executed the same to secure
Hancock in case of loss, and they were to share profits, if any, and
losses, if any should be sustained.  There was a profit, which plaintiff
alleges was $168, and he thought that the mortgage had been canceled,
until some one read in his hearing a notice in a local paper that his
home was advertised for sale under foreclosure.  He secured an injunc-
tion to restrain the same, and now asks the court to cancel the mort-
gage, which he alleges was satisfied or had served its purpose, as there
was no loss in the clam business, and for the payment to him by Han-
cock, his partner in the clam business, the sum of $84, one-half of the
profit of said business.

Smith gave his time and services and Hancock furnished the money
to carry on the clam business, as set out above.  There was received by
Hancock, over and above all the money furnished by him, more than
$168, which was profit in the business.  Defendant Hancock received all
the money for the sale of clams.

The jury returned the following verdict:

1. Have the note and mortgage described in the complaint been paid?
Answer: "Yes."

2. What amount, if any, is the defendant S. P. Hancock indebted
to the plaintiff?  Answer: "$84."

*W. R. Wheatley and Abernethy & Davis for plaintiff.*
*J. F. Duncan for defendants.*

WALKER, J., after stating the case:  The principal questions in this
case may be reduced to only two, the first being whether the mortgage
for the $250 was executed to secure S. P. Hancock against any loss by
reason of the money he advanced to run the business or whether it was
intended to secure him not only against loss in the business, but also to

secure the payment of an outside debt owing to him by the plaintiff; and the second, whether, if it was given to indemnify Hancock against any loss, it had been satisfied, or had served its purpose, by there not being any loss in the business, but a profit of $168, half of which belonged to the plaintiff. The issues were quite simple and the difference between the contentions sharply drawn. The court explained the case fully to the jury, instructing them if they found the facts to be as stated by the defendant, to return a verdict for him, answering the first issue "No"; but if they found the contrary to be true, that is, that the mortgage was given merely as an indemnity to S. P. Hancock against any loss in the business, for half of which the plaintiff was responsible, and there was no loss, but a gain, they should answer the first issue "Yes," and award plaintiff half of the profit, if any there was. It was conceded that the mortgage was given as an indemnity, but defendant claimed that it had been given also to secure a debt due by plaintiff to him. This contention was fairly submitted to the jury. We think that, under the charge, the defendant had the substantial benefit of all his contentions. The jury evidently found the contract to be as stated by the plaintiff, that the mortgage was given only for the plaintiff's part of the capital advanced by Hancock which should be lost in their partnership dealings, and was to be used only for that purpose. As the jury found that there was a profit, the verdict excludes the idea that there was anything due to the defendant on account of outside individual transactions between them. It appears that the court, in the charge, directed the attention of the jury specially to defendant's contention as to the settlement, which he says was in 1905, and which plaintiff alleges was in 1908; and the charge, therefore, was a sufficient response to defendant's prayers for instructions on this phase of the case, so far as he was entitled to them.

We are of the opinion that the defendant has had a fair and full hearing upon his contentions—if not in the exact form of them, as stated by him, then in substance and legal effect. Reversals are not granted merely for the slightest technical error, which a precise or exhaustive analysis of the charge might disclose, if there is no prejudice or injustice done; but the appellant has had a fair submission to the jury of the real issues, both upon the law and the evidence, and the determinative facts have been found against him. Verdicts and judgments should not be lightly set aside upon grounds which show the alleged error to be harmless or where the appellant could have sustained no injury from it. There should be at least something like a practical treatment of the motion to reverse, and it should not be granted except to subserve the real ends of substantial justice. Hilliard on New Trials (2 Ed.), secs. 1 to 7. "The motion should be meritorious and not frivolous." *S. v. Smith,* 164 N. C., 475-480. As that case shows, the courts have said that

the foundation of the motion for a new trial is the allegation of injustice, and the prayer is for relief. Unless, therefore, some wrong has been suffered, there is nothing to be relieved against. The injury must be positive and tangible, not theoretical merely. For instance, the simple fact of defeat is, in one sense, injurious, for it wounds the feelings, and may compel a surrender of property; but this alone is not sufficient ground for a new trial, although there may not have been strict regularity. The complaining party asks for redress, for the restoration of rights which have first been infringed and then taken away. There must be, then, a probability of repairing the legal injury, otherwise the interference of the court would be but nugatory. There must be a reasonable prospect of placing the party who asks for a new trial in a better position than the one which he occupies by the verdict. If he obtains a new trial, he must incur additional expense; and if there is no corresponding benefit, he is still the sufferer. Besides, courts are instituted to enforce right and restrain and punish wrong. Their time is too valuable for them to interpose their remedial power idly and to no purpose. They will only interfere, therefore, where there is a prospect of ultimate benefit. 3 Graham and Waterman on New Trials, p. 1235; *S. v. Smith, supra; S. v. Heavener,* 168 N. C., 156; *Ferebee v. Berry, ibid.,* 281; *Brogden v. Gibson,* 165 N. C., 16; *Steeley v. Lumber Co.,* 165 N. C., 27. What all this means is that there must be real and substantial harm done by the alleged error—not that we will merely guess at the probable effect of it upon the result, but that if we can clearly and surely perceive that it has not affected the result, it would be vain to be influenced by it and allow it to vitiate the judgment. But there was not even theoretical error in the trial of the case. The position of defendant as to the settlement, and the credit of the mortgage on the amount found to be due, was fairly submitted to the jury, and they had the whole matter before them, and the verdict is inconsistent with the defendant's view of the case.

The defendant's counsel ably presented his contentions, but upon a careful review of the record we conclude that there was no reversible error in any of the rulings of the court.

The defendant in this case had ample opportunity to make good his contention, but failed to convince the jury of its validity.

No error.